IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2004 Session

## STATE OF TENNESSEE v. JEFFREY R. DICKENS

**Direct Appeal from the Circuit Court for Rutherford County
No. 53261     Don Ash, Judge**

---

**No. M2003-00783-CCA-R3-CD - Filed April 6, 2004**

---

Following a bench trial, the Appellant, Jeffrey R. Dickens, was convicted of criminal attempt to commit unlawful photographing in violation of privacy as proscribed by Tennessee Code Annotated section 39-13-605 (2003), a class B misdemeanor. He was sentenced to six months in the Rutherford County Jail, which was suspended after service of eight days periodic confinement. On appeal, Dickens argues that his conviction cannot stand because an attempt to commit a violation of this section is not an indictable offense. Alternatively, he contends that the proof is insufficient to constitute a "substantial step" toward the commission of the attempted crime. After review, the judgment of conviction is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

John H. Norton, III, The Norton Law Firm, Shelbyville, TN  37162, for the Appellant, Jeffrey R. Dickens.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Jennings H. Jones, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On June 12, 2002, the victim, Janet Fenner, went to Tans & Stuff in Murfreesboro for a tanning session, where she was assigned to room two. The Appellant was also present at the tanning salon, and he was assigned to room three. Rooms two and three were adjacent to one another and shared a common wall. The victim testified that she completely undressed for her tanning session.

When she finished her session, she got out of the tanning bed and bent down to pick up her clothes. As she was standing up to put her clothes on, she looked into the mirror and saw "that someone had their hands over the corner of the wall taking pictures of [her]." At this point, she screamed repeatedly, "[W]ho took that picture?" She then covered herself with a T-shirt, abruptly opened the door, and yelled for someone to call 911. As she was standing in the hallway screaming for help, the Appellant exited room three and said, "I saw the camera, too." The victim accused the Appellant of taking the picture; however, the Appellant continued walking out of the tanning salon. She then put her clothes on, exited the salon, and observed the Appellant getting into a red Ford pickup truck with "HRS" as the first three letters on the license plate.

Jessica Ingle, an employee of Tans & Stuff, testified that each individual room was made to ensure a client's privacy. The doors to the rooms lock from the inside. Although the walls separating the rooms did not extend all the way to the ceiling, Ingle explained, "You cannot see over the wall. I mean, you can't stand flat footed and hold your hands up and be over the wall. But if you were to stand on something, you could have your hands above it." Ingle testified that, on the evening in question, the Appellant came into the tanning salon with a towel "hanging down over both sides of his hands." According to Ingle, this was "odd" because the salon provided towels for its customers, and she never saw anyone bring their own towel. Ingle admitted that she could not see what was underneath the towel.

Ingle further testified that, when she went to clean room three after the Appellant left, the tanning bed was still operating and the furniture had been moved. She explained,

> After he left the bed was still running and when I went in I turned the bed off and I went in to clean it. And the way the room was setup, when you walk in there is a bed and there is a table with a fan on it. And of course the bed was still on. The table was scooted against the adjoining wall to room two. And the fan was on the floor.

According to Ingle, the room was not in that condition when the Appellant entered it.

Officer Scott Newberg of the Murfreesboro Police Department responded to the call at Tans & Stuff. As a result of his investigation, the Appellant was developed as a suspect. A license check of the Appellant revealed that the Appellant was the owner of a 1993 red Ford Ranger with the license plate "HSR 782."

Detective Bill Herringlake was assigned to the investigation. Herringlake went to the Appellant's home in Shelbyville and observed the Appellant's red Ford Ranger parked in front of the residence. He then went to the Bedford County Sheriff's Office and consulted with Sergeant Chris White and Detective Chris Brown. White and Brown accompanied Herringlake back to the Appellant's residence. After the officers explained why they were there, the Appellant consented to a search of his residence, but he denied having a camera. Detective Brown testified that,

during the search of [the Appellant's] home, I did find a cable. . . . And I did recognize a cable in the house that connected to that style of camera. And I questioned him about that cable. And told him that I had a camera like that and why would he have a cable if he didn't have a camera.

The Appellant then admitted that he did have a camera outside in his truck. Brown and the Appellant walked to the truck, and the Appellant "got the camera out of the truck and . . . handed it to" Brown. The lens to the camera was found after a search of the truck's glove compartment. Also recovered from the Appellant's residence was "[t]he power pack, the charger for the camera, as well as a cable that will connect that camera to a video end on a TV or VCR, or any other type of video monitor." No pictures of the victim were found in the Appellant's camera, downloaded onto his computer, or transferred to a videotape.

Officer Herringlake explained that the digital camera found in the Appellant's truck had a movable screen, which rotated 360 degrees. Therefore, if someone held the camera above his or her head that individual would be able to tilt the screen and view the object focused upon. Herringlake also demonstrated for the court how a picture could easily be deleted from the camera by pressing a button.

A security tape was recovered from Tans & Stuff, which recorded the Appellant at the tanning salon. The victim identified the Appellant as the man on the tape exiting room three. The victim also identified the camera found in the Appellant's truck, as the camera she observed over the partition. She stated, "If you noticed the huge round part, I remember the camera that was used, the lens almost took up most of the camera size and that's the impression you get from that camera." The victim testified that, although no photograph was recovered, she would have been embarrassed had one been taken.

In November of 2002, a Rutherford County grand jury returned an indictment against the Appellant, charging him with unlawful photographing in violation of privacy. Following a bench trial on January 9, 2003, the Appellant was convicted of criminal attempt to commit unlawful photographing in violation of privacy. A sentencing hearing was held on March 11, 2003, and the trial court sentenced the Appellant to six months in the county jail, which was suspended after service of eight days confinement on consecutive weekends. The Appellant was also "banned from any and all tanning salons" during his probation period and was required to "comply with the results of psycho-sexual exam." This timely appeal followed.

**ANALYSIS**

First, the Appellant argues that "the trial court erred in denying [his] motion to dismiss" the indictment. He contends that:

[A]fter 1989, Tennessee Code Annotated § 39-12-101 specifically codified the inchoate offense of criminal attempt, however, Appellant insists that this codification

-3-

of the offense of criminal attempt did not change the requirement that, when the offense attempted to be committed is a <u>misdemeanor</u>, it must first be determined whether the actual offense is one defined as *mala in se* or whether it is merely *mala prohibita*. In other words, if the offense attempted to be committed is one determined to be *mala in se*, the attempt is an indictable offense. On the other hand, the attempt to commit a misdemeanor is not indictable when the offense attempted is one that the law considers *mala prohibita*. . . .

> . . . .

> . . . [I]t is quite evident that the prohibition against unlawful photographing in violation of privacy is "purely" a statutory prohibition, or "an act made wrong by legislation." Therefore, an <u>attempt</u> to violate this misdemeanor statute for which there was no corresponding common law offense would not constitute an indictable offense, and Appellant could not properly have been convicted of such an attempt.

The record before us demonstrates that the Appellant did not rely upon this argument in his pre-trial motion to dismiss the indictment, which was filed on December 11, 2002. Because this defense was never presented for determination in the lower court, it may not be raised for the first time on appeal. Tenn. R. App. P. 36(a). Moreover, it appears from the record that a hearing on the motion was held on January 3, 2003; however, the Appellant has failed to include the transcript of the hearing in the record before this court. The obligation of preparing a complete and adequate record for the issues presented on appeal rests upon the appealing party. Tenn. R. App. P. 24(b). For these reasons, the Appellant's issue is waived.[1]

Alternatively, the Appellant contends that, in order to be convicted of attempted unlawful photographing in violation of privacy, a photograph is required "so that the photograph can be examined to determine" if the requirements of the statute are satisfied. He contends that, in the absence of a photograph, the trial court erred in concluding that he took a "substantial step" toward the commission of the offense.

---

[1]Nonetheless, we are constrained to note that our criminal code makes no distinction between felony and misdemeanor criminal attempt, as evidenced by Tennessee Code Annotated section 39-12-107(a) (2003). This section, which specially references misdemeanor attempt, provides that:

> Criminal attempt is an offense one (1) classification lower than the most serious crime attempted, unless the offense attempted was a Class C misdemeanor, in which case the attempt would not be an offense.

Tenn. Code Ann. § 39-12-107(a). Moreover, the legislature has specifically stated, "It is the intent of the commission that common law offenses be replaced with statutory offenses to effectuate the goals set forth in § 39-11-101(1) and (2)." Tenn. Code Ann. § 39-11-102, Sentencing Commission Comments (2003). Accordingly, an individual can be convicted of an attempted misdemeanor regardless of its classification as *mala in se* or *mala prohibita*.

Unlawful photographing in violation of privacy is defined as:

> (a) It is an offense for a person to knowingly photograph or cause to be photographed an individual, when such individual is in a place where there is a reasonable expectation of privacy, without the prior effective consent of such individual, or in the case of a minor, without the prior effective consent of the minor's parent or guardian, if such photograph:
>
> > (1) Would offend or embarrass an ordinary person if such person appeared in the photograph; and
> >
> > (2) Was taken for the purpose of sexual arousal or gratification of the defendant.
> >
> > . . . .
> >
> > (d)(1) A violation of this section is a class A misdemeanor.

Tenn. Code Ann. § 39-13-605(a)(d)(1) (2003). As applicable to the instant offense, attempt is defined as:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> > . . . .
> >
> > (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (2003).[2] This statute further provides, "Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense." Tenn. Code Ann. § 39-12-101(b). The evidence in this case supports each of these elements beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

On the evening in question, the Appellant came into the salon with a towel draped over his hand. The Appellant and the victim were assigned to adjoining rooms, which shared a common wall. As the victim was picking up her clothes, she saw a camera over the wall. The victim exited the

[2]Within his sufficiency argument, the Appellant examines all three types of criminal attempt. However, only Tennessee Code Annotated section 39-12-101(a)(3) is applicable to the present offense. In this regard, the following is provided for instructional purposes.

[I]t must be recognized that our criminal code has established three distinct types of criminal attempts:

(1) Intentionally engaging in action or causing a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be. Tenn. Code Ann. § 39-12-101(a)(1). This type of attempt is designed to reject the defense of impossibility. Examples include receiving stolen property that was not, in fact, stolen, attempt to steal from an empty house or empty pocket, offering a bribe to a person believed to be a juror who is not, etc.

2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part. Tenn. Code Ann. § 39-12-101(a)(2). This is the most common type of attempt. Examples would include the intentional or knowing shooting of a victim not resulting in death, an unsuccessful rape, robbery, etc. Both types (1) and (2) deal with situations where the actor has done all he intends to do, but where the crime nevertheless has not been committed. [Types (1) and (2) are often referred to as the "last proximate act."]

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. Type three attempts involve those situations where the actor has taken a "substantial step" in preparing and planning the commission of the offense, yet has not done all that he intends to do. The problem is to distinguish between acts of [preparation] (which may not be criminal) and a criminal attempt. In this instance, criminal liability depends upon the actor having taken a "substantial step" in a corroborated course of conduct planned to culminate in the commission of a crime. Tenn. Code Ann. § 39-12-101(a)(3), (b); *see also* MODEL PENAL CODE § 5.01 (1985). Examples would include reconnoitering the place for the commission of the crime, the possession of materials to be employed in the commission of the crime that are specifically designated for such unlawful use or that can serve no lawful purpose of the actor under the circumstances, and lying in wait for the contemplated victim of the crime.

*State v. Elder*, 982 S.W.2d 871, 875 n.2 (Tenn. Crim. App. 1998).

room, and the Appellant likewise exited his room. At trial, the victim identified the camera found in the Appellant's truck, as the one she saw over the wall. Jessica Ingle, a Tans & Stuff employee, testified that each tanning room is designed to ensure privacy. The doors lock from the inside and, although the walls do not extend all the way to the ceiling, it would be difficult to see over them without standing on something. When Ingle went into the room which was occupied by the Appellant, the tanning bed was still operating and the furniture had been moved. Although no photograph was recovered, the victim testified that she would have embarrassed had one been taken. Furthermore, it can be inferred that taking pictures of an unclothed individual was for the purpose of sexual arousal or gratification. Accordingly, we conclude that a photograph is not required to support a conviction for attempted unlawful photographing in violation of privacy. The evidence is sufficient to support a finding that the Appellant's course of action constituted a "substantial step" toward the commission of the offense. The Appellant is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasons, we conclude that the Appellant's issues are without merit. The Appellant's actions constitute a "substantial step" toward the commission of the crime. Therefore, we affirm his conviction for attempted unlawful photographing in violation of privacy.

_____
DAVID G. HAYES, JUDGE